**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
CLIFFORD WILLIAMS,

                      Plaintiff,              **MEMORANDUM OF
DECISION & ORDER**
        -against-                       14-cv-5475 (ADS) (AKT)

SUFFOLK COUNTY, SUFFOLK COUNTY
POLICE DEPARTMENT, SUFFOLK
COUNTY POLICE OFFICER ALEXANDER
CRAWFORD, SUFFOLK COUNTY POLICE
OFFICER JOSEPH SUAREZ, SUFFOLK
COUNTY POLICE OFFICE JOHN JEHEBER,
SUFFOLK COUNTY POLICE OFFICER
ANTHONY SANGIMINO, SUFFOLK
COUNTY POLICE OFFICER FRANK
SANTANELO,

                      Defendants.
---------------------------------------------------------------X

**APPEARANCES:**

**Bernard T. Callan**
*Attorney for the Plaintiff*
320 Carleton Avenue
Suite 2000
Central Islip, NY 11722
        By:    Bernard T. Callan, Esq., Of Counsel

**Suffolk County Department of Law**
*Corporation Counsel for the Defendants*
H. Lee Dennison Building
100 Veterans Memorial Highway
PO Box 6100
Hauppauge, NY 11788
        By:    Arlene S. Zwilling, Assistant County Attorney

**SPATT, District Judge**:

        The Plaintiff Clifford Williams (the "Plaintiff") commenced this civil rights action under

42 U.S.C. § 1983 ("Section 1983") against the Defendants Suffolk County (the "County" or

"Suffolk"), Suffolk County Police Department (the "SCPD"), Suffolk County Police Officer Alexander Crawford ("Officer Crawford"), Suffolk County Police Officer Joseph Suarez ("Officer Suarez"), Suffolk County Police Office John Jeheber ("Officer Jeheber"), Suffolk County Police Officer Anthony Sangimino ("Officer Sangimino"), and Suffolk County Police Officer Frank Santanelo ("Officer Santanelo") (together with Officers Crawford, Suarez, Jeheber, and Sangimino, the "individual Defendants") (collectively, the "Defendants").

Presently before the Court is a motion by the Defendants pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56 for partial summary judgment. Specifically, the Defendants seek an order dismissing all of the Plaintiff's claims against the individual Defendants due to the expiration of the statute of limitations; or in the alternative, dismissal of the Plaintiff's Section 1983 claims for false arrest and malicious prosecution. For the following reasons, the Defendants motion is granted in part, and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the parties' respective Local Rule 56.1 Statements. The Court notes that while the Defendants and the Plaintiff included many facts relating to the Plaintiff's medications and alleged injuries, those facts are not discussed here because they do not bear on his false arrest or malicious prosecution claims, which are the only claims on which the Defendants have moved for summary judgment based on the admissible evidence.

In May of 2011, the Plaintiff lived at 187 Edinburgh Drive, Ridge, New York. The Plaintiff's residence was a condominium that is part of a homeowner's corporation known as Leisure Knoll Association, Inc. ("Leisure Knoll").

During the relevant period, Karen Kluber ("Kluber") was an employee of Leisure Knoll, and she worked on the property.

On August 11, 2011, Judge Patricia Filiberto ("Judge Filiberto") of the First District Court, County of Suffolk issued a temporary order of protection against the Plaintiff in favor of Kluber, in a criminal case that was pending against the Plaintiff, *People of the State of New York v. Clifford Williams*, 2011SU0282.

The order of protection ordered the Plaintiff to stay away from Kluber, and to stay away from her home, school, and place of business. It further directed him to refrain from communicating with, assaulting, stalking, harassing, menacing, intimidating, or threatening Kluber.

On August 31, 2011, Judge Filiberto denied the Suffolk County District Attorney's Office application to expand the order of protection to include the Leisure Village Recreation Center, located at 103 Sheffield Drive, Ridge, New York 11961.

On October 18, 2011, Kluber informed the SCPD that the Plaintiff had violated the order of protection. She signed a sworn SCPD Statement Form, in which she said:

> I, Karen Kluber[,] am an employee of Leisure Knolls Association, Inc. I was in the Recreation Building on Sheffield Dr. in Ridge with Fred Falco the Leisure Knolls Manager. I have an Order of Protection issued by 1st District Ct. Judge Filiberto [on] docket #2011SU0282—issued on 8/1/11—to expire 8/1/12. The Order of Protection is against Clifford Williams. On Oct. 18, 2011 at approximately 2:45 pm[,] I was posting papers in [the] window box in the common area of the Recreation center. Clifford Williams walked into the Room, walked by me, smirked and chuckled at me, walk[ed] towards the bathroom and snapped a few pictures of me. Cliff walked out the back door. Cliff then returned and re-entered through the front door again, walked very slowly by me within 1 foot. The order of protection is a stay away order. Cliff knew I was inside[,] and instead of just leaving the first time[,] he approached me. These actions did clearly violate the stay away portion. I have read this statement and I swear it is the truth.

(Defs.' 56.1 Statement ¶ 6). The SCPD Statement Form states that "[f]alse statements made herein are punishable as a class "A" misdemeanor pursuant to Section 210.45 of the Penal Law." (*Id.*).

On October 18, 2011, Officer Jeheber arrested the Plaintiff and charged him with criminal contempt in the second degree, N.Y. PENAL LAW § 215.50-3, for violating the order of protection. At the time of the arrest, the Plaintiff told Officer Jeheber that the order of protection did not require him to stay away from the recreation center. Officer Jeheber did not investigate the Plaintiff's claim.

Officer Jeheber prepared a misdemeanor information outlining the Plaintiff's alleged criminal conduct. In the information, Officer Jeheber wrote:

> The [Plaintiff], at 103 Sheffield Dr., Ridge, in the town of Brookhaven, Suffolk County, New York, on or about October 18, 2011, at approximately 2:45 P.M., engaged in intentional disobedience or resistance to the lawful process or other mandate of a court; in that, the [Plaintiff], did walk past the victim, [Kluber] [], and did laugh at her before taking [her] picture. The [Plaintiff] left the building and then re-entered through the front door and walked slowly past the victim. The [Plaintiff] is in violation of an existing order docket #2011SU0282 issued by Judge Filiberto on 8/1/11.

(*Id.* ¶ 10). Officer Jeheber noted that the charge was based both upon his own personal knowledge, as well as information from Kluber.

The Plaintiff was transported to the SCPD Seventh Police Precinct, and remained there until the morning of October 19, 2011. Between October 19, 2011 and October 21, 2011, the Plaintiff was treated at several area hospitals for injuries that he alleges were caused by members of the SCPD. On October 22, 2011, he was arraigned on the misdemeanor information.

At some point, the Plaintiff brought a motion to dismiss the misdemeanor information for facial insufficiency. On September 26, 2014, the First District Court, County of Suffolk, issued a written order dismissing the misdemeanor information for facial insufficiency. The court, in its order, noted that the certified copy of the order of protection had not been filed with the

misdemeanor information; and that the information did not contain any non-hearsay allegations establishing that the Plaintiff had notice of the order of protection or its contents. (Defs.' Ex. G).

**B. The Relevant Procedural History**

On September 18, 2014, the Plaintiff filed his initial complaint. The initial complaint brought claims against the County and the SCPD. It did not name any of the individual Defendants, but instead brought claims against unnamed John Doe SCPD officers. On October 9, 2014, the County and the SCPD filed their answer.

On February 19, 2015, the Plaintiff, without the consent of the Defendants, or leave from the Court, filed an amended complaint. On February 25, 2015, the Defendants filed a letter motion to strike the amended complaint. The Defendants' letter motion was denied without prejudice, as this Court does not permit letter motions. *See* INDIV. R. OF ARTHUR D. SPATT, RULE IV-B.

On March 31, 2015, the Court liberally construed the Plaintiff's filing of an amended complaint as a request to amend his complaint. The Court noted that the Defendants had failed to renew their letter motion to strike the amended complaint as a formal motion, and granted the Plaintiff's motion to amend the complaint as unopposed.

The Plaintiff's amended complaint substituted Officers Crawford, Suarez, Jeheber, Sangimino, and Santanello for the John Doe defendants. Many of the Plaintiff's claims in the amended complaint are redundant, and most of the claims do not specify against which Defendant they are brought. Therefore, assuming that where the Plaintiff does not name certain defendants, he intends to bring the claim against all of the Defendants, the Plaintiff brings claims against all of the Defendants for false arrest under Section 1983; excessive force under Section 1983; Section 1983 conspiracy; and malicious prosecution under Section 1983. Finally, the Plaintiff alleges that

the constitutional violations were a result of a policy or practice of the County, and brings a Section 1983 *Monell* claim against the County pursuant to that allegation.

On August 4, 2017, the Defendants filed the instant motion for summary judgment pursuant to Rule 56. The Defendants argue that the Plaintiff's claims against the individual Defendants must be dismissed because the claims were filed after the statute of limitations had run, and the Plaintiff's amended complaint does not relate back to the initial filing. Alternatively, the Defendants contend that the Plaintiff cannot sustain his claims for false arrest and malicious prosecution because he was arrested on the sworn complaint of a victim, and because he did not obtain a favorable termination of prosecution. In the final alternative, the Defendants state that Officer Jeheber is entitled to qualified immunity on those claims.

## II. DISCUSSION

### A. The Legal Standard

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

"[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (internal quotation marks omitted)). In other words, "[c]redibility determinations, the weighing of the evidence, and

the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Barrows v. Seneca Foods Corp.,* 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Redd,* 678 F.3d at 174 (internal quotation marks omitted)). The Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.,* 677 F.3d 109, 119 (2d Cir. 2012).

The movant has the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If a nonmoving party fails to make a sufficient showing on an essential element of their case where they will have the burden of proof, then summary judgment is appropriate. *Id.* at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Liberty Lobby,* 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for that party. *See Dawson v. Cty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004).

**B. As to Whether the Plaintiff's Claims Against the Individual Defendants Are Barred by the Statute of Limitations**

The Defendants argue that the Plaintiff's claims against the individual Defendants are barred by the statute of limitations because he did not amend his complaint until more than three years after his claim accrued, and he cannot avail himself of the benefits of Rule 15(c) because a lack of knowledge of a defendant's identity is not a "mistake" under Rule 15. Relying on this Court's prior decision in *Morales v. Suffolk*, 952 F. Supp. 2d 433 (E.D.N.Y. 2013) (Spatt, J.), the Plaintiff argues that there is an exception here because the County delayed the identification of the individual Defendants. The Court finds that the Defendants have not addressed whether the

7

Plaintiff's claims relate back to the filing of the original complaint under Rule 15(c)(1)(A), and therefore denies the Defendants' motion on that basis.

An amended complaint that adds a new party must meet the following criteria to relate back under Rule 15(c)(1)(C):

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and the original complaint was filed within the limitations period.

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quoting *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 468–69 (2d Cir. 1995) (internal alterations omitted, emphasis in original)).

The Defendants are correct that the Plaintiff cannot avail himself of the benefits of Rule 15(c)(1)(C) because "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" *Id.*

However, defendants ignore the fact that "even if a plaintiff's claims are barred by Rule 15(c)(1)(C), the Second Circuit has held that an amended pleading asserting § 1983 claims against John Doe defendants may still relate back under Rule 15(c)(1)(A)." *JCG v. Ercole,* No. 11 Civ. 6844(CM)(JLC), 2014 WL 1630815, *13 (S.D.N.Y.) (citing *Hogan*, 738 F.3d at 518), *report and recommendation adopted* 2014 WL 2769120 (S.D.N.Y. 2014); *see also* FED. R. CIV. P. 15(c)(1)(A) (stating that "[a]n amendment . . . relates back . . . when the law that provides the applicable statute of limitations allows relation back"); *Hogan*, 738 F.3d at 518 ("Rule 15(c)(1)(A) instructs courts, then, to look to the entire *body* of limitations law that provides the applicable statute of limitations." (emphasis in original)) .

The statute of limitations provided in New York State law "provides a more forgiving principle of relation back in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C)." *Id.* Section 1024 of the N.Y. C.P.L.R., which creates a special procedure for claims brought against John Doe Defendants, states that:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024.

Under Section 1024 of the N.Y. C.P.L.R., a court may allow a plaintiff to substitute a named party for a John Doe party if the plaintiff meets two requirements: (1) "'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name,'" and (2) "describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant. " *Hogan*, 738 F.3d at 518–19 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 883 N.Y.S.2d 99, 104 (N.Y. 2009)). A plaintiff must then "ascertain the identity of unknown 'Jane Doe' parties, and . . . serve process upon them, within 120 days from filing." *Bumpus*, 66 A.D.3d at 31, 883 N.Y.S.2d at 105; *see also JCG,* 2014 WL 1630815, at * 13 ("If a plaintiff fulfills these conditions, he 'must then ascertain the identity of unknown [John] Doe parties, and . . . serve process upon them, within 120 days from filing [the original complaint].'" (alterations in original) (quoting *Williams v. United States,* No. 07–CV–3018, 2010 WL 963474, at * 12 (S.D.N.Y. Feb. 25, 2010))). The 120-day deadline imposed by C.P.L.R. 305-b may be extended "upon good cause shown or in the interest of justice." N.Y. C.P.L.R. 305-b.

The Defendants do not address any of these requirements in their initial memorandum of law. While they do argue in their reply memorandum of law that the Plaintiff did not exercise due

9

diligence prior to the running of the statute, they did not do so in the context of Rule 15(c)(1)(A). Instead, they addressed the Plaintiff's diligence in light of the exception to Rule 15(c)(1)(C) made by this Court in *Morales*, 952 F. Supp. 2d 433. However, the Court notes that *Morales* was decided several months before *Hogan*, in which the Second Circuit held that Rule 15(c)(1)(A) also permitted relation back, and had a more relaxed standard for relating back than Rule 15(c)(1)(C).

More importantly, the Defendants did not raise the issue of the Plaintiff's failure to exercise due diligence in their initial memorandum of law. Therefore, the Court does not consider the Defendants' contention that the Plaintiff failed to exercise due diligence. *See, e.g., Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995) (stating that normally the court "will not consider arguments raised for the first time in a reply brief"); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").

As the Defendants have moved for summary judgment, it is their burden to show that the Plaintiff's claims are barred by the statute of limitations. Therefore, the Defendants have not met their burden of showing that the Plaintiff's claims cannot relate back under Rule 15. *See Vallade v. Fischer*, No. 12-CV-00231 (A)(M), 2014 WL 5481881, at *9 (W.D.N.Y. Oct. 29, 2014) (denying the defendants' motion for summary judgment where they argued that the plaintiff's amended claim did not relate back under Rule 15(c)(1)(C), but failed to address the requirements of Rule 15(c)(1)(A) and Section 1024).

Accordingly, the Defendants' motion for summary judgment dismissing the Plaintiff's claims against the individual Defendants based on the statute of limitations is denied.

**C. As to the Plaintiff's Malicious Prosecution Claims**

The Defendants state that the Plaintiff's claims for malicious prosecution must be dismissed because a dismissal for facial insufficiency is not a favorable termination of the prosecution.

The Plaintiff did not respond, in any way, to the Defendants' arguments concerning his malicious prosecution claim. Therefore, that claim is deemed abandoned. *See Robinson v. Fischer*, No. 09 CIV. 8882 LAKAJP, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." (citing *Lipton v. Cnty. of Orange,* 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.")) (citing cases); *see also Bonilla v. Smithfield Assoc. LLC,* 09 Civ. 1549, 2009 WL 4457304 at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing certain claims where the plaintiff failed to respond to the defendant's arguments); *Thomas v. Atl. Express Corp.,* 07 Civ.1978, 2009 WL 856993 at *2 (S.D.N.Y. Mar. 31, 2009) (same) (citing *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722–23 (S.D.N.Y. 2005)); *Burchette v. Abercrombie & Fitch Stores, Inc.,* 08 Civ. 8786, 2009 WL 856682 at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing plaintiff's constructive discharge claim because plaintiff abandoned it by failing to address it in her opposition motion to defendant's motion to dismiss all claims); *Hanig*, 384 F. Supp. 2d at 723 ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); *Martinez v. Sanders,* 02 Civ. 5624, 2004 WL 1234041 at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are

deemed abandoned."); *Anti–Monopoly, Inc. v. Hasbro, Inc.,* 958 F. Supp. 895, 907 n. 11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal."), *aff'd,* 130 F.3d 1101 (2d Cir. 1997).

Accordingly, the Defendants' motion for summary judgment dismissing the Plaintiff's malicious prosecution claims is granted.

## D. As to the Plaintiff's False Arrest Claims

The Defendants contend that the Plaintiff's claim for false arrest cannot be sustained because he was arrested on probable cause, as the officers relied on the sworn complaint of the complaining witness, Kluber. In the alternative, the Defendants argue that Officer Jeheber is entitled to qualified immunity. In opposition, the Plaintiff argues that there is a question of fact as to whether there was probable cause. The Court finds that the SCPD officers had probable cause to arrest the Plaintiff; or at the very least, arguably possessed probable cause.

### 1. The Relevant Law

A Section 1983 claim for false arrest rests upon the Fourth Amendment right of an individual to be "secure . . . against unreasonable searches and seizures," including arrests without "probable cause." U.S. CONST. AMEND. IV; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant,* 101 F.3d at 852). "Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without . . . justification." *Weyant*, 101 F.3d at 852.

The existence of probable cause is a complete defense to a Section 1983 claim for false arrest, and constitutes justification for the arrest. *Jackson v. City of New York*, 939 F. Supp. 2d

235, 248 (E.D.N.Y. 2013) (citing *Weyant,* 101 F.3d at 852; *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995)).

"Probable cause exists when the arresting officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Mitchell v. City of N.Y.*, 841 F.3d 72, 77 (2d Cir. 2016) (quoting *Jenkins*, 478 F.3d at 84–85). "Probable cause is not a particularly demanding standard." *United States v. Scala,* 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005).

Even if there was not probable cause, a police officer is entitled to qualified immunity if they had arguable probable cause to arrest a plaintiff in a false arrest suit. *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski v. City of Hartford,* 723 F.3d 382, 390 (2d Cir. 2013) (internal quotation marks omitted)). Qualified immunity is not a defense to liability, but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). The Defendants have the burden of establishing qualified immunity. *Garcia*, 779 F.3d at 92; *Vincent v. Yelich,* 718 F.3d 157, 166 (2d Cir. 2013); *see also Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) ("Because qualified immunity is an affirmative defense, . . . the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time.").

Probable cause arguably existed if either 1) the officer possessed a reasonable objective belief that it was present, or 2) reasonably competent officers could disagree on whether there was probable cause. *Garcia*, 779 F.3d at 92; *Zalaski*, 723 F.3d at 390. "In deciding whether an officer's conduct was objectively reasonable . . . , we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of

the officer." *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986)); *see also Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002) (stating that "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." (internal citations omitted)).

### 2. Application to the Plaintiff's Claims

The Plaintiff was arrested and charged with criminal contempt in the second degree, N.Y. PENAL LAW 215.50-3. "Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid protective order existed, (2) the defendant knew about that order, and (3) the defendant intended to violate the order." *Carthew v. Cty. of Suffolk*, 709 F. Supp. 2d 188, 198 (E.D.N.Y. 2010) (citing PENAL LAW 215.50-3; *People v. Williams,* 181 Misc.2d 415, 696 N.Y.S.2d 369, 370 (N.Y. Crim. Ct. 1999) ("To establish the crime of criminal contempt in the second degree pursuant to Penal Law § 215.50(3) there must exist a lawful order of a court clearly expressing an unequivocal mandate, and there must be an intentional violation of the order. Thus, the defendant must have known of the order and the defendant's 'conscious objective' must have been to violate the order.").

In a sworn statement, Kluber informed Officer Jeheber that the Plaintiff violated the order of protection issued by Judge Filiberto by approaching her twice, coming within one foot of her the second time, and taking photographs of her. In the Court's view, this alone gave Officer Jeheber probable cause to arrest the Plaintiff. Kluber informed Officer Jeheber that there was an existing order or protection, that the Defendant was aware of it, and that he violated it. This

14

information constituted probable cause for Officer Jeheber to arrest the Plaintiff for violation of N.Y. PENAL LAW 215.50-3.

"Probable cause exists if a law enforcement officer receives information from a victim or eyewitness that warrants arrest, 'unless the circumstances raise doubt as to the person's veracity.'" *Hill v. Candres*, No. 15–cv–858, 2016 WL 7235800, at *2 (S.D.N.Y. Dec. 14, 2016) (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)); *see also Adams v. Williams*, 407 U.S. 143, 146–47, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612 (1972) (stating that the veracity of citizen complaints who are the victims of the very crime they report to the police is assumed for the purpose of evaluating probable cause); *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." (citing *Daniels v. United States,* 393 F.2d 359, 361 (D.C. Cir. 1968)), *aff'd*, 993 F.2d 1534 (2d Cir. 1993).

Here, there is no evidence in the record that would have raised Officer Jeheber's doubt as to Kluber's veracity. Therefore, her sworn statement was sufficient to establish probable cause. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (upholding summary judgment dismissing the plaintiff's false arrest claim where the complainant told the officers that there was an existing order of protection, that the plaintiff had violated it, and the police officers did not have any reason to doubt the complainant's veracity); *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 242 (S.D.N.Y. 2014) ("The existence of the protective order, and Ms. Morgan's complaint regarding Plaintiff's alleged violation of it, are indicative of probable cause for the crime of contempt of the order."), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d Cir. 2015).

Furthermore, according to the misdemeanor information, Officer Jeheber also had personal knowledge of the order of protection, meaning that he viewed it. The order of protection contains the Defendant's signature, acknowledging that he was "advised in Court of [the] issuance and contents of [the] Order." (Defs.' Ex. A). "In cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." *Carthew*, 709 F. Supp. 2d at 197 (collecting cases).

The sole point raised by the Plaintiff is that he told Officer Jeheber that the order of protection did not extent to the recreation center. First, the Court notes that by this statement, the Plaintiff admitted that there was, in fact, an order of protection, and that he was aware of it. This further provided probable cause to Officer Jeheber. Second, "[p]robable cause is not eliminated [] by the mere existence of evidence that could permit a conclusion of innocence." *Carpenter v. City of N.Y.*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer. Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge, or jury." (internal citation omitted)); *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 225 (E.D.N.Y. 2010) ("While, in hindsight, it may be that [the officer] could have asked additional questions, or conducted a fuller investigation, the role of the court is not to overly scrutinize the decisions of police officers from its vantage in chambers, long after those decisions were made, but to determine whether the officers acted reasonably and in compliance

with what the law requires based on what they knew at the time."); *Cornett v. Brown,* No. 04–CV0754 (DGT)(LB), 2006 WL 845568, at \*7 (E.D.N.Y. Mar. 30, 2006) ("[W]hile an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'" (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003))). That is, "once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (citation omitted). Therefore, at that time, Officer Jeheber was not required to investigate whether the order of protection extended to the recreation center.

Finally, and most importantly, even if the order of protection did not extend to the recreation center, Kluber's sworn statement shows that probable cause existed that the Plaintiff violated the order of protection issued by Judge Filiberto. The order directed the Plaintiff to stay away from Kluber. Kluber did not tell Officer Jeheber that the Plaintiff violated the order by entering the recreation center. Instead, she swore that he violated the "stay away" portion of the order. Kluber said that the Plaintiff did this by taking photographs of her; purposefully returning to the recreation center after seeing her there moments earlier despite the stay away order; and walking right up to her. These facts certainly created probable cause to arrest the Plaintiff. *Coyle v. Coyle*, 354 F. Supp. 2d 207, 211 (E.D.N.Y.) ("The crucial inquiry is whether [the complainant's] accusation provided the County Defendants with probable cause to believe that the Plaintiff violated the Order of Protection; not whether he actually committed a criminal act."), *aff'd*, 153 F. App'x 10 (2d Cir. 2005).

Therefore, probable cause existed to arrest the Plaintiff. As probable cause is an absolute defense to a false arrest claim, those claims must be dismissed.

Even if the Court were to find that the Defendants lacked probable cause to arrest the Plaintiff, they would still be entitled to qualified immunity under these circumstances. At the very least, Officer Jeheber had arguable probable cause to arrest the Plaintiff as "officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); s*ee also Saucier v. Katz,* 533 U.S. 194, 206, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ("[Q]ualified immunity can apply in the event the mistaken belief was reasonable"). As "'arguable probable cause' will suffice to confer qualified immunity for the arrest," *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004), the Defendants would be entitled to summary judgment based on qualified immunity.

Therefore, the Plaintiff's claims for false arrest necessarily fail. Accordingly, the Defendants' motion for summary judgment dismissing those claims pursuant to Rule 56 is granted.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion for partial summary judgment pursuant to Rule 56 is granted in part, and denied in part. It is denied to the extent that the Defendants have not met their burden in showing that the Plaintiff's amended complaint cannot relate back to his initial complaint under Rule 15(c)(1)(A). It is granted to the extent that the Plaintiff's Section 1983 claims for false arrest and malicious prosecution are dismissed. Therefore, the remaining claims that will be heard by the jury are the Section 1983 excessive force and conspiracy claims against all of the Defendants; and the Section 1983 *Monell* claim against the County.

The parties are directed to appear before this Court for a status conference on March 8, 2018 at 9:00 A.M..

It is **SO ORDERED:**

Dated: Central Islip, New York

February 12, 2018

               ___*/s/ Arthur D. Spatt*___

               ARTHUR D. SPATT

               United States District Judge